1              UNITED STATES DISTRICT COURT

2                   DISTRICT OF MAINE

3    _____

4    UNITED STATES OF AMERICA,        CRIMINAL ACTION

5              Plaintiff          Docket No:  2:14-69-JDL-11

6

7         -versus-

8

9    PIERRE AZOR,

10              Defendant
     _____

11                Transcript of Proceedings

12

13   Pursuant to notice, the above-entitled matter came on
     for **Sentencing** held before **THE HONORABLE JON D. LEVY,**
14   United States District Court Judge, in the United
     States District Court, Edward T. Gignoux Courthouse,
15   156 Federal Street, Portland, Maine, on the 10th day of
     September 2015 at 10:07 a.m. as follows:

16

17   Appearances:

18   For the Government:  David B. Joyce, Esquire
                          Assistant United States Attorney
19
     For the Defendant:  Robert C. Andrews, Esquire
20
     Also Present:  Heather Belanger, U.S. Probation
21

22
                   Lori D. Dunbar, RMR, CRR
23                 Official Court Reporter

24            (Prepared from manual stenography and
                   computer aided transcription)
25

1                   (Open court.  Defendant present.)

2              THE COURT:  Good morning.

3              MR. JOYCE:  Good morning, Your Honor.

4              MR. ANDREWS:  Good morning, Your Honor.

5              THE COURT:  We are proceeding in the case of

6    United States versus Pierre Azor.  This is Docket

7    14-CR-69.  Counsel, please note your appearances for

8    the record.

9              MR. JOYCE:  Good morning, Your Honor, David

10   Joyce for the United States.

11             THE COURT:  Thank you.

12             MR. ANDREWS:  Robert Andrews for Pierre Azor.

13             THE COURT:  Thank you.  And, Mr. Joyce, this

14   is a case in which there are no victims for which

15   notice is required; is that correct?

16             MR. JOYCE:  Yes, Your Honor.

17             THE COURT:  Mr. Azor, I'd like you to stand,

18   please.  The overall purpose of this hearing that we'll

19   now be conducting is for me to sentence you based upon

20   your conviction.  I see there's people outside.  Do

21   they want to come in; do we know?

22             THE DEFENDANT:  This is my fiancée, yes, sir.

23             THE COURT:  Would she like to come in?

24   Perhaps someone could let them know they can come in.

25             MR. ANDREWS:  I think she's out there because

1     there's a young child.

2          THE COURT:  Oh, I'm sorry, okay.  It wasn't

3     clear to me whether she felt that she couldn't come in

4     or not.  All right, thank you.

5          So, again, the purpose of this hearing is for you

6     to be sentenced based upon your conviction.  I'm going

7     to hear from the attorneys, I'll hear from you if you

8     wish to speak, and of course from any witnesses that

9     you may wish to present.

10          I'm going to be asking you and your attorney a

11    series of questions.  I want to be certain that you

12    have read and understand the revised presentence

13    report, that there is nothing that interferes with your

14    ability to understand what is happening today, and

15    overall to make sure you understand the sentence that I

16    impose and the reasons for it.  So let me begin with my

17    questions.

18          Have you used any types of drugs or alcohol in the

19    past 24 hours?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  All right.  And, Mr. Azor, when

22    you speak you don't need to lean down into the

23    microphone; it will pick you up if you remain standing,

24    that's fine.

25          Mr. Azor, are you currently taking any

1    medications?

2            THE DEFENDANT:  No, sir.

3            THE COURT:  How far did you go in school?

4            THE DEFENDANT:  Actually I went through a job

5    corps and got my GED.

6            THE COURT:  Are you able to read and write?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Do you understand why you are here

9    today?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  And in your words why are you here

12    today?

13            THE DEFENDANT:  I'm here to get sentenced.

14            THE COURT:  Is there anything that might

15    interfere with your ability to understand what is being

16    said today?

17            THE DEFENDANT:  No, sir.

18            THE COURT:  And do you authorize your attorney

19    to speak on your behalf at today's hearing?

20            THE DEFENDANT:  Yes, sir.

21            THE COURT:  Mr. Andrews, have you read and

22    discussed with Mr. Azor the revised presentence report

23    in this case?

24            MR. ANDREWS:  I have, Your Honor.

25            THE COURT:  And you've had sufficient time to

```
 1    do that?

 2            MR. ANDREWS:  Yes, Your Honor.

 3            THE COURT:  Is it your view that he

 4    understands the report?

 5            MR. ANDREWS:  He understands the contents of

 6    the report and how that report may affect his

 7    sentencing today.

 8            THE COURT:  Mr. Azor, have you read the

 9    revised presentence report in its entirety?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  Have you had enough time to

12    discuss it with Mr. Andrews?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  Mr. Andrews, at this point in

15    time, given the Government's response to your

16    sentencing memorandum, what issues, if any, remain in

17    dispute with respect to the revised presentence report?

18            MR. ANDREWS:  Your Honor, with respect to the

19    presentence report, the only issues would be the

20    characterizations of the convictions and -- or the

21    other past criminal incidences that are reported there

22    and whether or not the Court may consider or should

23    consider those characterizations.  And the other issue,

24    Your Honor, is whether it is appropriate to include a

25    monitoring component of Mr. Azor's use of computer and
```

1    Internet because of the text messaging that was used in

2    this case.

3            THE COURT:  All right.  With respect to the

4    first question, as I understand your objection, it is

5    that the Court in your view should not consider

6    information regarding prior arrests that did not result

7    in convictions that are reported in the revised

8    presentence report; is that correct?

9            MR. ANDREWS:  That is correct, and some of the

10   characterizations reported about the conduct that did

11   result in convictions in other instances.

12           THE COURT:  And is your objection in

13   particular with the prior conviction that resulted in

14   Mr. Azor's incarceration that what's set forth in the

15   report is incorrect?

16           MR. ANDREWS:  It's -- our problem with it,

17   Your Honor, is not so much that it's incorrect but that

18   it is taken from police reports and not reported from

19   agreed-to information or information that would

20   otherwise be necessary by proof beyond a reasonable

21   doubt.

22           THE COURT:  So your objection is as set forth

23   in your memorandum, which is as a matter of law you

24   believe that it would be inappropriate for me to

25   consider that information because of its source.

1          MR. ANDREWS:  That's correct.

2          THE COURT:  And do you have anything further

3     to add to the argument that you've made in your

4     memorandum?

5          MR. ANDREWS:  I do not, Your Honor.

6          THE COURT:  And, Attorney Joyce, is there

7     anything further you wanted to say on that point?

8          MR. JOYCE:  Your Honor, only that I'm unaware

9     of any case extending Shepard to the lengths and

10    reaches that Mr. Andrews seeks here.

11         THE COURT:  All right.  I have read all of the

12    opinions that are cited in both memoranda on this

13    question, and I conclude as a matter of law that it is

14    appropriate for the Court to rely upon that information

15    as it's been reported, and so to that extent the

16    objection is overruled.

17         With respect to the monitoring condition, I'd like

18    to actually defer our discussion and my resolution of

19    that until we get to the supervised release conditions

20    after I determine what the sentence should be in this

21    case.  So we will come back to that.

22         MR. ANDREWS:  Certainly, Your Honor.

23         THE COURT:  All right.  So, Mr. Azor, again,

24    you have read the revised presentence report in its

25    entirety, correct?

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  And you feel that you understand

3    it and you've had sufficient time to discuss it with

4    your lawyer.

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  And apart from the objections that

7    I've just discussed with Mr. Andrews, is there anything

8    else in the revised presentence report that you feel is

9    inaccurate?

10            THE DEFENDANT:  No, sir.

11            THE COURT:  And, Attorney Andrews, do you

12    agree that apart from the issues that we've just

13    discussed the report is otherwise accurate and correct

14    in all other respects?

15            MR. ANDREWS:  It is, Your Honor.

16            THE COURT:  Thank you, you can be seated.

17    I'll hear from the Government at this time with respect

18    to sentence.

19            MR. JOYCE:  Thank you, Your Honor.  The facts

20    of this case are well known to the Court both from the

21    suppression hearing and the thorough presentence report

22    that was prepared by the probation officer in this

23    matter.

24        I think what's striking here is the quantity of

25    drugs that Mr. Azor was bringing to Maine, 1,075

1    oxycodone pills, if released to the streets would have

2    had a devastating impact on a population here in the

3    state of Maine that is already undergoing a serious

4    opiate crisis that appears to be continuing to this

5    very day without any significant downturn in its

6    impact.

7        I would suggest to the Court that a sentence

8    within the guideline range here is appropriate in light

9    of the conduct and the impact that this conduct would

10   have had on this community.

11       THE COURT:  Do you have anything to say as to

12   where within the guideline range a sentence would be

13   appropriate in this case?

14       MR. JOYCE:  I think the low end would be

15   sufficient but not greater than necessary, Your Honor.

16       THE COURT:  Thank you.  Mr. Andrews?

17       MR. ANDREWS:  Your Honor, Mr. Azor came to

18   this country in 1994 at the age of 11 as a refugee from

19   Haiti.  One would hope that when leaving such a

20   situation that things would improve, but unfortunately

21   for Mr. Azor things did not improve and in some ways

22   they got worse.

23       What happened to Mr. Azor was that he grew up in

24   significantly disadvantaged circumstances, and when he

25   got to this country, instead of being cared for by the

1    adults that brought him here, they neglected him and

2    they abused him and that sort of resulted in his having

3    to leave his parents and go to other relatives who,

4    instead of treating him as a human and as a family

5    member, they essentially treated him as a slave who

6    they didn't give food to, they didn't allow him to

7    sleep in a bed like a normal child, and they

8    essentially used him as labor to watch the other

9    children that were in that home.

10        That led Mr. Azor to fend for himself, and like

11    many people who grow up in disadvantaged circumstances

12    with no education, one of the skills that they're

13    taught is to -- to survive is to get money however they

14    can.  And unfortunately that creates circumstances

15    where there are people who are willing to participate

16    in the United States market for illegal narcotics.

17        Mr. Azor has been sentenced prior for a marijuana

18    conviction.  We know that from the presentence report.

19    We have seen that.  And he's done a significant amount

20    of time because of that conviction.  That conviction

21    has also led to a deportation order from immigration

22    back to his homeland in Haiti, but they won't take him.

23    Those facts are significant in that we're here again.

24        So why is it that we're here again?  Well,

25    unfortunately, things got hard for Mr. Azor and he went

1    back and relied on the things that he learned to do as

2    a child to survive and he began to become involved in

3    the drug trade again.  And we can see that with his

4    move back here to Portland, and we can see that from

5    the information that's gathered from the wiretaps that

6    in February of 2014 -- I'm sorry, 2013 -- no, 2014 that

7    he was introduced to the other members of this

8    conspiracy, and that introduction led to what became

9    the seizure of 1,075 pills.  It is a significant amount

10   of pills.  But the evidence in this case we suggest

11   shows that he is a courier and that that is his role in

12   this offense.  And as a courier we think that that

13   should put him in a certain position.

14        Now, some of the upper-end sentences that have

15   been put in this case are the five-year sentence for

16   Pierre Dubois, and then there's -- and the conspiracy

17   leader in this case hasn't been sentenced yet, but we

18   expect that he may have a sentence that is similar to

19   Mr. Dubois', given their relationship.  And then there

20   is Dimitry Gordon, who is not connected with this

21   particular conspiracy, but his sentence was 28 months.

22   And so we believe that Mr. Azor, because of his role,

23   should be something less than 28 months.

24        This Court has the power to sentence Mr. Azor to

25   something less than the guidelines.  And that is what

1    we are asking for is a variant sentence in this case

2    based, one, on his role in the offense and the

3    disparity that a high guideline sentence from our

4    perspective would be high because of the other

5    sentences that have been handed down in this case

6    justifies a significant reduction from the guidelines.

7    In my sentencing memorandum I've suggested that an

8    appropriate variant sentence is two years.

9         I'd also like this Court to consider the fact that

10   he's likely to spend time in detention after his

11   sentence has been concluded because of the immigration

12   consequence and the deportation order.  It will take

13   some time for Homeland Security and Immigration and

14   Customs Enforcement to decide that they aren't going to

15   be able to repatriate him to Haiti again, and so we're

16   asking for a further reduction to 18 months for this

17   sentence so that he'll essentially be doing 24 months.

18         THE COURT:  Mr. Andrews, the revised

19   presentence report in this case details that following

20   Mr. Azor's arrest he made bail and, not simply being a

21   courier, sort of returned to active drug selling.  How

22   do you -- how should I treat that information in

23   arriving at a sentence in this case?

24         MR. ANDREWS:  Your Honor, his arrest and the

25   other conversations -- I think that the other

conversations are based partly on hearsay from what is gleaned from the wiretap information related to Dastinot and I think Pierre Dubois or someone else that he was communicating with.  I understand that there were some discussions, but there isn't any other evidence to suggest, one, that there was a network of distribution, that there were other hand-to-hand sales with my client.  Essentially what there is is conversation about him potentially coming back, but there is no indication that he actually did.  And I don't think that we see any communications from him saying that he was back in the -- what we I guess call the game but back to dealing drugs.

    And that's -- I don't think that that information should be considered because I don't think it's reliable.  If it were reliable, we would see other evidence, including wiretap evidence of phone calls between them where prices and/or amounts are negotiated.  We don't see that.  We have a conversation where they talk about it, but we don't have numbers and amounts.  And that is my particular problem with the way the facts were recounted in the presentence investigation report was that that didn't have the reliability that I would ordinarily see in a drug calculation.  And that is why I suggest again that the

```
 1   Court shouldn't consider that in terms of its variant
 2   sentence.
 3            THE COURT:  Thank you.
 4            MR. ANDREWS:  So, Your Honor, to conclude, I
 5   suggest that the Court sentence Mr. Azor to 18 months.
 6            THE COURT:  Thank you.
 7            MR. ANDREWS:  Mr. Azor would like to address
 8   the Court, as would his -- the mother of his child.
 9            THE COURT:  Thank you.  Mr. Azor, as I think
10   you know, you do have the right to speak now, you're
11   not required to, but Mr. Andrews has indicated that you
12   would like to make what's called allocution, which is
13   your right.  So if that's the case please stand up and
14   go ahead and speak.
15            THE DEFENDANT:  Good morning, Your Honor.
16            THE COURT:  Good morning.
17            THE DEFENDANT:  Your Honor, first I'd like to
18   say that I take responsibility for my action and I'm
19   truly sorry for the people that I hurt that I sold to,
20   for things that -- people that I caused harm to.  And I
21   come to realize those people, it could have been my
22   brother, it could have been somebody's brother,
23   somebody's mom, somebody's kids that I sold drugs to.
24   And I take responsibility for my action and I got
25   regrets I got into that.  Your Honor, growing up for
```

1    me, Your Honor, it was hard.  Excuse me.

2              THE COURT:  It's okay, take your time.

3              THE DEFENDANT:  It was hard, Your Honor.  I

4    came to this country in '94.  I came here in 1994 with

5    my mother and my stepdad.  And -- me and my little

6    brother and -- excuse me.  My little brother, we didn't

7    have nobody to care for us.  My stepdad used to abuse

8    us and beat us.  Sometimes they would not feed us, no

9    food.  They would not feed us with no food, so I

10   remember when I was 14 me and my mom and my stepdad, we

11   got into it because he was beating on me, beating on my

12   little brother, and I didn't want that, I was tired of

13   that.  And the police called, if you look at my record

14   you'll see the police called and we got into a fight

15   and I got -- I ended up getting arrested because I

16   wouldn't let him keep beating on us.  And DHS got

17   involved, they wanted to take me and my little brother.

18   I didn't want that; I didn't want to grow up in a

19   foster home.

20        So I end up leaving, they ended up kicking us out

21   and we went to New York to my mom's sister's house,

22   which when we get there, I thought they were going to

23   treat us a lot better but they never did.  They didn't

24   send us to school, they -- excuse me.  They didn't send

25   us to school and they make us babysit because they have

 1    a bunch of kids in the house.  They had us babysitting.

 2    They would not buy us no clothes or nothing, and when

 3    they cook they would have -- everybody would take the

 4    food, they would just leave the food on the pot and we

 5    would just go and feed ourselves.  And they would put a

 6    lock on the fridge.  I never seen anybody put a lock on

 7    the fridge.  They would put a lock on the fridge for us

 8    not to go in there and get no food if we was thirsty or

 9    nothing.

10         So -- and we stayed there for two years.  I was

11    tired of that, so I end up coming back to Boston at the

12    age of 15 and I end up living with a friend of mine.

13    And at first it was all fine and he told us in order

14    for us to stay here we got to pay rent.  I was 15 so

15    what I did, there was -- I got a dishwashing job at a

16    restaurant in Brookline, Mass., and I got a dishwashing

17    job and I was working there.  And I believe I was

18    getting 7.50 an hour.  And -- because my little brother

19    was a little bit younger for him to get a job, so I was

20    paying $300 for the rent.  And the restaurant got sold

21    by a new owner so he fired me because I was under the

22    age of 16, I got fired.

23         So at the time I didn't have no money, I didn't

24    have a mom I could go to.  I didn't even know my dad

25    growing up; my dad died when I was young.  So I end up

1    selling weed to get back -- in order for me and my

2    brother to survive, so I end up selling weed, getting

3    into trouble.  And the neighborhood that I grew up,

4    Your Honor, it's tough, it's hard, because I grew up in

5    Boston, where I grew up, it's just -- it's either

6    you're going to survive -- you'd be lucky if you make

7    it past 21 where I grew up, a lot of killing, shooting,

8    drugs.  And so I didn't see nothing else but that in

9    order for me to survive for me and my little brother so

10   I have to sell drugs, which now I understand by doing

11   that, Your Honor, it's not the best way to do.  I

12   remember me and Mr. Andrews having a --

13          MR. ANDREWS:  Don't talk about anything we

14   said.

15          THE DEFENDANT:  Okay, and I was like -- it was

16   so tough, Your Honor.  So I got a job -- I got a job

17   doing security, I have a few jobs, Your Honor, doing

18   security.  I have a job doing -- working in filing

19   some -- and I try -- every time I try, Your Honor, it

20   gets hard for me and I end up going back to selling

21   weed and to make a living surviving.

22       And in Boston, Your Honor, the reason I came to

23   Maine, in Boston the rent I was paying, me and her, it

24   was 1,350, which I couldn't afford 1,350 for -- because

25   I got three kids, one with her and two -- and the

1    oldest is 16, he's a sophomore, he's about to graduate

2    in the next two years.  And I feel so bad that I don't

3    even know if I'm going to be there to see his

4    graduation.  I never really had a dad, so I'm trying to

5    be the best that I can be for my kids.

6         And I know by selling drugs to people in the

7    community, I know it's wrong to do it, Your Honor, and

8    I'm truly sorry, Your Honor.  I've been under house

9    arrest.  I've been working, Your Honor, doing what I'm

10   supposed to be doing.  I've been drug free.  I haven't

11   did no drugs, I've been working ever since, Your Honor.

12   So it really be hard but I am trying my best, Your

13   Honor.

14        And I ask Your Honor please, please find in your

15   heart to give me the lightest sentence that you can,

16   Your Honor.  Because I know I could be a better man, I

17   know I could change, Your Honor.  I know I could be a

18   productive member of society, Your Honor, because

19   that's what I have been doing.  You haven't heard

20   anything about me getting in no trouble.  I've been

21   working at Ruby Tuesday in Auburn, been going to work

22   all the time, drug free.  I haven't did no drugs and

23   I'm clean, Your Honor.  So please, Your Honor, have

24   mercy on me.

25             THE COURT:  Thank you, Mr. Azor.

1          MR. ANDREWS:  Your Honor, at this time I'd

2    like to ask that Jasmine Tartt be brought in the

3    courtroom.  I'd also like permission for Mr. Azor to

4    sit in the back with his child while she speaks to the

5    Court, if that's okay with the Court.

6          THE COURT:  That's fine.

7          MR. ANDREWS:  Thank you.  Your Honor, this is

8    Ms. Tartt, she'd like to address the Court.

9          THE COURT:  Thank you.  Would you begin by

10   stating your full name, and also pull the microphone

11   down so that it's in front of your -- there you go,

12   that's great.  Please go ahead.

13         MS. TARTT:  Hi, I am Jasmine Tartt.

14         THE COURT:  Go ahead.

15         MS. TARTT:  I'm Pierre's girlfriend.

16         THE COURT:  It's okay.

17         MS. TARTT:  Sorry.  I have known him for about

18   four years.

19         THE COURT:  One second, I'm having trouble

20   hearing you, so let's wait to see if the baby calms

21   down.

22         MS. TARTT:  She want me.

23         THE COURT:  She wants you?  Would it help if

24   you held her while you spoke?

25         MS. TARTT:  Yeah, I just don't want to be

1    rude.

2         THE COURT:  That's okay, why don't we do that.

3    Why don't you hold the child and you can bring her up

4    to the microphone.

5         MS. TARTT:  This is his daughter, Ghislaine.

6         THE COURT:  Thank you.

7         MS. TARTT:  Thank you.  I've been with Pierre

8    a couple years now, about four years.  We have a

9    beautiful child together.  And as the years of

10   knowing -- getting to know him, his past and his

11   struggles that he went through, became a survivor.  And

12   I do want to say thank you for giving a chance to

13   making him actually a better man, going out, getting a

14   job, being more, you know, supportive with his family.

15   And he does, and as I, you know, grow more to see him

16   now as becoming a better man, I do see that he is sorry

17   for those that he did hurt, you know, along the way.

18       And he's a great dad.  He do have two other

19   children.  Every morning they call.  Every morning she

20   wakes up singing the ABCs or Itsy Bitsy Spider.  He's

21   just a wonderful man and it -- like I said, watching

22   him growing from his struggles to his survival, you

23   know, he definitely is sorry.

24        THE COURT:  Thank you.

25        MS. TARTT:  You're welcome.

1              MR. ANDREWS:  You're all set.

2         Your Honor, one of the other purposes of

3    sentencing, Your Honor, is to provide necessary medical

4    and/or substance abuse treatment.  One of the things

5    that came along with Mr. Azor's involvement was the use

6    of oxycodone pills.  So far he's been able to maintain

7    his sobriety while on bail, but drug treatment would be

8    useful and we would request that any sentence that the

9    Court fashion include the 500-hour drug program and

10   that -- we also ask that the Court recommend that he be

11   held in Berlin, New Hampshire, so that he can be close

12   to his family and that they may have a chance to see

13   him over the period of incarceration.

14             THE COURT:  Mr. Andrews, I'm not certain of

15   the period -- minimum period within which Mr. Azor

16   would be required to serve to be eligible for the

17   500-hour drug program, but I suspect that it's more

18   than what you have proposed by way of the sentence in

19   this case.

20             MR. ANDREWS:  Well, Your Honor, I think that

21   if it were 18 months, I think that's the limitation.

22   If it were 24 I think that's within the

23   characterization of how long it can be, it would take a

24   year for him to complete the program and he can get as

25   much as a year off for his participation in the

1    program.  I'm suggesting that it is sufficient enough

2    time, but we would ask for the recommendation.  And I

3    think the BOP makes that determination when he gets

4    there and if there's space available, that's why it's a

5    recommendation.

6              THE COURT:  All right.

7              MR. ANDREWS:  Thank you.

8              THE COURT:  Is there anything further from the

9    Government?

10             MR. JOYCE:  Your Honor, I just wanted to

11   briefly respond to the suggestion that Mr. Azor's role

12   was limited to that of a mere courier.  I think

13   Paragraph 9 and Paragraph 14 of the presentence report

14   contain information suggesting that's not entirely the

15   case.  Mr. Azor has also referred to the people I sold

16   to, would suggest he's more than just a mere courier.

17   And I think the Court's absolutely correct that

18   following his arrest and release on state charges the

19   information from the wiretap interception suggests that

20   he had not completely removed himself from the drug

21   business.  That's all I have, thank you.

22             THE COURT:  Thank you.  Attorney Andrews,

23   anything further?

24             MR. ANDREWS:  Your Honor, I just -- we would

25   ask that the Court also -- and this may be premature

1    and maybe we should address this after the sentencing,

2    but we were also going to ask that he be allowed

3    self-surrender and bail pending appeal.  I don't know

4    how the Court would like me to handle that; I just want

5    to make sure the Court was aware that we would ask for

6    that.

7         THE COURT:  All right.  Is there any objection

8    by the Government with respect to self-reporting?

9         MR. JOYCE:  Yes, Your Honor, I would ask he be

10   remanded at this time.  I think that the information in

11   this case is insufficient to meet his burden by clear

12   and convincing evidence that he's not likely to flee or

13   pose a risk to the danger -- risk to the public.

14   Mr. Azor, as noted in the presentence report, does have

15   an order of removal from the United States, and I would

16   suggest he be remanded at this time.

17        THE COURT:  Attorney Andrews, anything further

18   on that point?

19        MR. ANDREWS:  Your Honor, we simply suggest

20   that it would be clear and convincing evidence, we

21   think that finding was made when he was released on

22   the -- through the detention hearing process, and that

23   his continued release is contingent upon his good

24   behavior.  And while I understand that probation has

25   two complaints about him being late, one was because he

1    was feeding his child and it took longer for him to get

2    home than he had expected, and the other, Your Honor,

3    was his participation in a gathering for work related

4    to New Year's.  We suggest that those kinds of

5    infractions aren't the kind of thing that would justify

6    or cause the Court to be concerned that he's a flight

7    risk now that he's been convicted and sentenced when

8    he's been convicted for some time and those sort of

9    findings still maintain their force through the appeal

10   period.  That's why we've asked for bail pending

11   appeal.

12           THE COURT:  All right.  Thank you.  Attorney

13   Joyce, I do want to hear from you on the question of

14   the electronic -- I'm sorry, the -- yes, the bail --

15   the supervised release condition related to the

16   computers and Internet access and the like.  How could

17   that be justified in this case, apart from the fact

18   that, as it seems to be true in it seems almost every

19   crime that comes to court now, cell phones are

20   involved?

21           MR. JOYCE:  Your Honor, I haven't seen that

22   condition proposed prior to recently in connection with

23   this case.  I share the Court's concerns.  I understand

24   the probation office's position.  At this time I would

25   entirely defer to the Court as to whether it's

1    appropriate.  It's not a condition the Government

2    affirmatively is seeking.

3          THE COURT:  Okay, thank you.

4      Mr. Andrews, anything further?

5          MR. ANDREWS:  Your Honor, as I've indicated in

6    my memorandum, I'm not going to repeat that, I just

7    want to suggest that there -- in the case law, when

8    this issue has come up with respect to people who have

9    been convicted of possession of child porn offenses or

10   distribution offenses related to the possession of

11   child porn, that electronic monitoring like this was

12   not a certainty.  And there are in fact some courts, as

13   I've indicated, that have said that, well, we have

14   these sort of various factors that we want to consider.

15       And I think that what's important here is that the

16   Court realizes that this is really just another mode of

17   communication.  This is really no different -- or the

18   electronic communication that the probation department

19   is using to justify these what we consider

20   extraordinary monitoring requirements is really just

21   another way of communicating just like voice, and we

22   certainly haven't seen conditions where probation has

23   asked for phone taps.  And we suggest that it's

24   inappropriate in this case.  There's nothing to suggest

25   that the use of computer was the extensive means of

1    communication, and there's nothing to suggest that the

2    use of computer was an otherwise sophisticated part of

3    the offense in this case.  So we ask that the Court

4    reject the imposition of that monitoring requirement.

5    Thank you.

6             THE COURT:  Thank you.  I will now recess so

7    that I can reflect on the arguments that have just been

8    made before I determine finally what Mr. Azor's

9    sentence will be.  So we will be in recess for

10   approximately 20 minutes.

11     (A recess was taken from 10:40 a.m. to 11:07 a.m.)

12            THE COURT:  We're now resuming the sentencing

13   in the case of United States versus Pierre Azor.  You

14   can be seated at this time.  I'll indicate when you

15   need to stand, Mr. Azor.

16     I have considered in arriving at sentence in this

17   case the revised presentence report prepared by

18   Ms. Belanger, as well as the sentencing memoranda that

19   the attorneys have provided, as well as, of course, all

20   that has been presented in court today.

21     The sentencing guidelines in this case produce the

22   following numbers.  The total offense level for

23   Mr. Azor is 21.  His criminal history category is II,

24   and this results in a guidelines sentencing range of 41

25   to 51 months.  The guidelines indicate for this

1    criminal history category a period of supervised

2    release of between one to three years, but this is a

3    case in which the statutory minimum is three years, and

4    so that will be -- that provides the floor for the

5    period of supervised release.

6         Counsel, is there any objection to the guidelines

7    as I've just indicated?

8              MR. JOYCE:  No, Your Honor.

9              MR. ANDREWS:  No, Your Honor.

10             THE COURT:  Thank you.  Mr. Azor, I have

11   carefully considered all the materials that I've been

12   provided, as well as the arguments that have been made

13   by both Mr. Joyce and Mr. Andrews, as well as your own

14   statement, as well as the statement of your girlfriend.

15        It is my responsibility under the law to arrive at

16   a sentence which is sufficient but not greater than

17   necessary to correspond to the need for the sentence,

18   so my focus is on what is the need for the sentence

19   here.

20        The law tells me that the sentence should reflect

21   the seriousness of the offense, promote respect for the

22   law, provide just punishment, afford adequate

23   deterrence, protect the public from further crimes by

24   you, and provide you with needed educational or

25   vocational training, medical care, or other

1    correctional treatment in the most effective way.

2         And specifically I considered -- have considered

3    in arriving at a sentence the nature and circumstances

4    of the crime that you committed, your history and

5    characteristics, the guidelines, the need to avoid

6    disparities -- unwarranted disparities in sentencing

7    between different defendants, and the need for

8    restitution where it's appropriate, and there is no

9    claim for restitution here.  I've considered all those

10   factors, but my focus has been on your history and

11   characteristics and the nature and circumstances of the

12   offense that you committed.

13        With respect to the guidelines in this case, I

14   have carefully considered the guidelines.  I have

15   concluded that the guideline range is greater than the

16   period necessary for incarceration, so I'm going to

17   impose a sentence that varies from the guidelines, and

18   I'll explain my reasons for that.

19        You've pled guilty to possession with intent to

20   distribute oxycodone and aiding and abetting.  This is

21   a serious crime.  It goes without saying it's a serious

22   crime, particularly given the fact that you were

23   transporting over a thousand tablets of oxycodone.

24   The -- I'll return to the seriousness of the crime in

25   just a moment, but let me first now focus upon your

1    personal characteristics, which I think are quite

2    important in arriving at a sentence.

3        First of all, your age.  You're 33 years old.

4    You're not in your 20s.  You are the father of two

5    children, and you are in your 30s.  Your life story is

6    quite compelling.  The fact that you came here as a

7    refugee, as a relatively young child, and then were

8    subject to what is really horrific abuse and neglect by

9    the adults who were responsible for taking care of you

10   is really tragic.  You strike me and your history as

11   has been portrayed to me as being a survivor.  You have

12   survived under some of the most difficult circumstances

13   that a kid could be put through.  Unfortunately, it's

14   also pretty clear that you adapted to your

15   circumstances and survived by ultimately turning to

16   drugs and to the drug trade.  That can't be excused but

17   it certainly can be understood in view of your

18   remarkable history.

19       It's also significant to me that there's no

20   indication in any of the information I've received that

21   you've ever received any type of sustained substance

22   abuse treatment and, although I am aware that you

23   received some vocational-related training, it doesn't

24   seem as if you were ever subjected to really any

25   significant and sustained effort to give you vocational

1    skills that would allow you to become employed and --

2    in a way that you could live a decent life and not, as

3    you have, turn to crime.

4         It's also significant to me that you do have a

5    criminal history.  You have served at least two years,

6    it's not clear to me exactly how long it was, but I

7    know it was at least two years in prison for a

8    drug-related offense.  And, sadly, that correctional

9    experience was not sufficient to redirect your life,

10   and here you are today.

11        It's also quite compelling that after your arrest,

12   original arrest in March of 2014, in relation to this

13   case, the record does reflect that you immediately

14   turned -- returned to drugs as a way of supporting

15   yourself.

16        On the other hand, I note that, and I think it's

17   quite important to note that, for the -- since your

18   release in May of 2014, so it's far longer than a year

19   now, you appear to have done well and have worked and

20   have been employed and, with a couple of blips, have

21   otherwise complied with all requirements of

22   supervision.  This all suggests to me that you are a

23   person that is capable of being rehabilitated and given

24   the proper incentives and the proper direction and

25   training.  And that's positive.

1          So as is often the case, there are compelling

2     reasons pointing in opposite directions as to what the

3     appropriate sentence should be in this case, and it's

4     my responsibility to try and make sense of them and to

5     reconcile them on the one hand at the age of 33 still

6     involved in -- at the age now of 33 but in your 30s

7     still involved in the drug life deeply, committing a

8     serious crime, having already spent years in prison,

9     and understanding that this is the way that you've

10    adapted to surviving in the world because of some

11    terrible early experiences.  And, on the other hand,

12    that you seem to possess qualities which suggest that

13    you could become a law-abiding and productive member of

14    our society.

15         And the law tells me that the sentence in this

16    case should be sufficient but not greater than that

17    necessary to achieve its purposes.  And so I've really

18    tried to focus on the purposes and the need for the

19    sentence.

20         The need for the sentence is, first of all, as

21    I've already indicated, to impress upon you the

22    seriousness of the crime that you've committed.  The

23    opiate plague in Maine that we are experiencing is

24    horrific, and the introduction of over a thousand

25    oxycodone tablets into the Lewiston or Portland

1    markets, if you had been successful, would have done

2    great damage.  And so I'm satisfied that the sentence

3    in this case has to reflect, both for you and also for

4    the public, that this was a serious crime which the

5    Court takes very seriously as well and is deserving of

6    significant punishment.

7        You've already been incarcerated once.  That

8    didn't redirect you.  I don't want you to be

9    incarcerated a third time.  I want this to be the last

10   time.  And I want the sentence to be sufficiently stiff

11   that you understand that it's only going to be much,

12   much worse if you can't turn your life around, because

13   it is.

14       I'm also concerned about the history that you

15   have, even in the face of really good reasons not to

16   revert to the drug trade, and of course those reasons

17   would be your children.  The fact is that you have

18   fallen back on it, as the circumstances seem to have

19   compelled you to do or at least you felt compelled to

20   do, both after your Massachusetts incarceration and

21   then, of course, right after your arrest here.  And

22   that causes me grave concern and, again, tells me that

23   the sentence in this case needs to be of sufficient

24   length to impress upon you that we will not tolerate

25   this anymore and that, if you find yourself back before

1    a judge a third time for sentencing for this type of

2    behavior, you're going to be going away for a long,

3    long time.  That's the deterrent end of the purpose of

4    the sentence.

5        Also it seems to me the sentence here should

6    account, however, for your -- the indications that

7    you've presented to me that you are rehabilitatable.

8    Among the most notable is this past year plus since

9    you've been on detention or have been out, rather, not

10   detained but on release, and have put together a

11   sustained period of time in which you've worked and

12   demonstrated a desire to be a father and to lead a

13   healthy life, healthier than you were leading.

14       I also identify as a significant purpose or need

15   for the sentence to provide you with needed educational

16   and vocational training and other correctional

17   treatment in the most effective manner.  The record

18   reflects that you yourself have identified the need for

19   anger management.  It's very clear that you need a

20   sustained period of drug treatment, and it's also clear

21   to me that you would benefit from any work force or

22   vocational training that might be available to you

23   during your period of incarceration and that, if there

24   is any available to you, it should be for a period of

25   time that's sufficient to make it meaningful.  And I

1    have factored that into my sentence as well.

2        So to summarize the prime purposes of the

3    sentence, the need for the sentence as I've identified

4    it is to impress upon you and the public the

5    seriousness of your crime, to afford deterrence to you,

6    and to provide you with needed educational and

7    vocational training and other correctional treatment in

8    the most effective way.  Taking all those into

9    consideration, I've concluded that the guideline range

10   is -- of 41 to 51 months is greater than that

11   necessary.  So at this time I would like you to stand

12   for sentencing.

13       Based upon all those considerations, I've

14   concluded that a just and fair sentence is as follows:

15   I am going to commit you to the custody of the U.S.

16   Bureau of Prisons to be imprisoned for a total term of

17   36 months.  I will recommend to the Bureau of Prisons

18   that you be incarcerated at Berlin in New Hampshire and

19   that you be considered for participation in the

20   500-hour drug treatment program.

21       I am going to grant your request on the one hand

22   to be released -- to self-report, so that I'm directing

23   that you self-report by 2:00 o'clock p.m. on

24   September 25th, 2015.  I want to remind you, and you

25   should have a chance to confer with Attorney Andrews

1    about this before we close the record on that issue,

2    that you will be obligated to get yourself to the

3    institution where you're told to report, and there's no

4    guarantee it's going to be Berlin.  It's going to be

5    where the Bureau of Prisons decides you should be

6    incarcerated, and that would be at your expense and

7    responsibility.  So if there's any concern about that,

8    Attorney Andrews, you should raise that with me before

9    we close the record of this case.

10              MR. ANDREWS:  Your Honor, and -- my only

11    concern is my understanding was that the Bureau of

12    Prisons will send out a letter as to when he had to

13    report, and I just want to make sure that the Court was

14    aware that that's how self-report occurs and that I'm

15    worried that by the 25th won't be enough time for the

16    Bureau of Prisons to have sent out that letter.

17              THE COURT:  Attorney Joyce, what's your view

18    on that?

19              MR. JOYCE:  Your Honor, I -- I don't have any

20    information about how long it typically takes.  I can

21    tell the Court from prior matters the time given is

22    generally about a month.  Perhaps the marshals or

23    probation office would have more concrete information

24    about that.

25              THE COURT:  Ms. Belanger, do you have any

1     information to provide on this question?

2            PROBATION OFFICER:  Judge, I don't directly

3     from BOP, but I would agree with the Government that in

4     prior cases with other judges they do do at least a

5     month for self-reporting.

6            THE COURT:  All right.  I'll modify the

7     requirement to October 16th at 2:00 p.m.  I have

8     carefully considered the motion that you filed with

9     respect for request to be released pending appeal.  I

10    have considered all of the arguments made therein.  I

11    am not persuaded that the circumstances justify that he

12    be released on bail pending appeal in this case, and so

13    the motion is denied.

14        I'm going to order that, Mr. Azor, that you be on

15    supervised release following your incarceration for a

16    term of three years.  You are ordered to report to the

17    probation office in the district to which you are

18    released within 72 hours of release from the custody of

19    the Bureau of Prisons and to comply with all the

20    standard conditions that have been adopted by the

21    Court.

22        Attorney Andrews, have you reviewed with Mr. Azor

23    all the standard conditions of release?

24            MR. ANDREWS:  I have, Your Honor.

25            THE COURT:  And are you satisfied that he

1    understands them?

2            MR. ANDREWS:  I do.

3            THE COURT:  Is that correct, Mr. Azor?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  You are aware of and understand

6    all of the standard conditions of release; is that

7    correct?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  With respect to the special

10   conditions of release, which I'm now going to recite

11   into the record, I am going to sustain the objection to

12   the special condition with respect to computer and

13   Internet monitoring.  I am otherwise, however, going to

14   impose the following special conditions:

15        First, that Mr. Azor participate in mental health

16   treatment, specifically to address anger management, as

17   directed by the supervising officer until released from

18   the program by the supervising officer.  He is to pay

19   or copay for services during the treatment to the

20   supervising officer's satisfaction.  Do you understand?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  Secondly, that his

23   participation -- he is to participate, rather, in work

24   force development programs and services as directed

25   and, if not employed, shall perform up to 20 hours of

1    community service per week.  Work force development

2    programming may include assessment and testing,

3    educational instructions, training classes, career

4    guidance, and job search and retention services.  Do

5    you understand?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  You are to not use or possess any

8    controlled substance, alcohol, or other intoxicant, and

9    shall participate in a program of drug and alcohol

10   abuse therapy to the supervising officer's

11   satisfaction.  This will include testing to determine

12   if you have used drugs or intoxicants.  You are to

13   submit to one test within 15 days of release from

14   prison and at least two but not more than 120 tests per

15   calendar year thereafter as directed by the supervising

16   officer.  You are to pay or copay for services during

17   the treatment to the supervising officer's

18   satisfaction.  You're not to obstruct or tamper or try

19   to obstruct or tamper in any way with any tests.  Do

20   you understand?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Fourth, a probation officer may

23   conduct a search of you and of anything you own, use,

24   or possess if the officer reasonably suspects that you

25   have violated a condition of supervised release and

1    reasonably suspects that evidence of the violation will

2    be found in the areas to be searched.  Searches must be

3    conducted at a reasonable time and in a reasonable

4    manner.  Failure to submit to a search may be grounds

5    for revocation of release.  Again, do you understand?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  I find that all of these -- each

8    of these conditions is necessary and justified on the

9    basis of the information set forth in the revised

10   presentence report.  The defendant himself has

11   recognized his need for mental health treatment to

12   address anger management.  It's apparent he's in need

13   of work force development programs and services, given

14   the absence of any sustained vocational training and

15   work history.  His need for substance abuse treatment

16   and monitoring is also apparent, given the nature of

17   this crime and his earlier crime, and for the similar

18   reason the search requirement is needed as well.

19       Attorney Andrews, is there any objection to the

20   conditions of release as I have now indicated?

21           MR. ANDREWS:  No, Your Honor.

22           THE COURT:  I did not say but I also want to

23   indicate for the benefit of counsel as well as the

24   record that I take very seriously the argument that was

25   made with respect to avoiding unwarranted disparities

1    with respect to sentence, particularly as pertains to

2    the other defendants that are part of the indictment to

3    which Mr. Azor is subject in this case.  And suffice it

4    to say that I have given careful consideration to that

5    and have of course sought to try and individualize the

6    sentence in this case, taking into account among other

7    things the prior conviction record and also the

8    individual circumstances of each defendant.

9         Before I advise Mr. Azor of his rights of appeal,

10   is there anything further from the Government?

11         MR. JOYCE:  Your Honor, I didn't hear the

12   Court impose the $100 mandatory special assessment,

13   perhaps I missed it, but I just want to make sure

14   that's part of it.

15         THE COURT:  You didn't miss it.  I didn't say

16   it.  Thank you.  Let me turn to that.

17         Mr. Azor, I am imposing a $100 special assessment.

18   I'm also finding that you do not have the ability to

19   pay a fine and so I'm waiving a fine in this case.

20         Attorney Joyce, is there anything else?

21         MR. JOYCE:  There is not, Your Honor, thank

22   you.

23         THE COURT:  Attorney Andrews, anything else?

24         MR. ANDREWS:  No, Your Honor.

25         THE COURT:  Mr. Azor, I want to advise you of

```
 1      your rights of appeal.  To -- you have the right to

 2      appeal both your conviction and sentence.  If you wish

 3      to exercise that right, you have to file a written

 4      notice of appeal with the clerk of this court within

 5      14 days of today.  Do you understand?

 6               THE DEFENDANT:  Yes, sir.

 7               THE COURT:  Secondly, if you fail to do that,

 8      you will have given up your right to appeal, and that

 9      would be both your sentence and conviction, and there

10      will be no right to appeal.  Do you understand?

11               THE DEFENDANT:  Yes, sir.

12               THE COURT:  Finally, if you can't afford to

13      file the appeal, you can appeal without expense to you.

14      The clerk will prepare and file the appeal on your

15      behalf if you request her to do so within 14 days of

16      today.  Do you understand?

17               THE DEFENDANT:  Yes, sir.

18               THE COURT:  I've already indicated that I'm

19      releasing you to self-report on the -- by the date that

20      I've indicated and as otherwise directed by the Bureau

21      of Prisons.

22           Is there anything further from the prosecution?

23               MR. JOYCE:  Only that I assume the existing

24      bail conditions remain in effect?

25               THE COURT:  Yes, thank you.  Mr. Azor, all
```

1    existing conditions of release, your bail conditions,

2    remain in place and you have to comply with them.  Do

3    you understand?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Anything else?

6              MR. JOYCE:  No, thank you, Judge.

7              THE COURT:  Attorney Andrews, anything else on

8    your behalf?

9              MR. ANDREWS:  No, Your Honor.

10             THE COURT:  I want to thank both counsel for

11   their assistance and advocacy in this case.

12        Mr. Azor, I do want to wish you good luck.  I

13   don't take any pleasure in having to sentence you.  It

14   seems to me that if what comes from this is that you do

15   actually get some benefit from being incarcerated,

16   which of course is my hope and intention, that would be

17   great.  If you turn your life around when you get out,

18   after some time, if you find yourself to be successful

19   in life, write me a letter, let me know.  Nothing would

20   give me greater pleasure than that.

21             THE DEFENDANT:  Thank you, sir, I will.

22             THE COURT:  All right.  Good luck to you.

23   Thank you, counsel, Court will be in recess.

24                  (Time noted:  11:29 a.m.)

25

1

2                      **C E R T I F I C A T I O N**

3    I, Lori D. Dunbar, Registered Merit Reporter, Certified

4    Realtime Reporter, and Official Court Reporter for the

5    United States District Court, District of Maine,

6    certify that the foregoing is a correct transcript from

7    the record of proceedings in the above-entitled matter.

8    Dated:  January 8, 2016

9                    /s/ Lori D. Dunbar

10                   Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25