UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

_____

UNITED STATES OF AMERICA,              CRIMINAL ACTION

                    Plaintiff            Docket: 2:14-cr-69-JDL-9


          -versus-


JEAN TONY VALBRUN,

                    Defendant
_____

Transcript of Proceedings


Pursuant to notice, the above-entitled matter came on for **Sentencing** held before **THE HONORABLE JON D. LEVY,** United States District Court Judge, in the United States District Court, Edward T. Gignoux Courthouse, 156 Federal Street, Portland, Maine on the 9th day of June, 2016 at 2:00 p.m. as follows:


Appearances:

For the Government:  David B. Joyce, Esquire
                     Assistant United States Attorney

For the Defendant:  Neale A. Duffett, Esquire




Dennis R. Ford
Official Court Reporter

(Prepared from manual stenography
and computer aided transcription)

```
1                    (Open court.  Defendant present.)

2              THE COURT:  Good afternoon.

3              MR. JOYCE:  Good afternoon, Your Honor.

4              THE COURT:  We're now proceeding in the case

5    of United States versus Jean Valbrun.  This is docket

6    15-cr-69.  Counsel, please identify yourself for the

7    record.

8              MR. JOYCE:  David Joyce for the United States,

9    Your Honor.

10             MR. DUFFETT:  Neale Duffett for Mr. Valbrun.

11             THE COURT:  Thank you.  Mr. Joyce, has the

12   Government provided notice to any victims entitled to

13   notice by law?

14             MR. JOYCE:  There are none in this case, Your

15   Honor.

16             THE COURT:  Thank you.  Mr. Valbrun, I'd like

17   you to stand please.  Mr. Duffett, I know you suffered

18   an injury.  If it would be better for you to be seated

19   today, that's fine.

20             MR. DUFFETT:  That's okay, Judge.  That's

21   fine.

22             THE COURT:  All right.  Mr. Valbrun, we're

23   here for a sentencing and the overall-purpose of this

24   hearing is for me to issue a sentence based upon your

25   conviction.  I'm going to hear from the attorneys and
```

1    I'll hear from you as well if you wish to speak.  I'll

2    also hear from any witnesses that either side may

3    present.

4        Now, I'm going to be asking you and Attorney

5    Duffett a series of questions.  I want to be certain of

6    a number of things.  The first is that you've received,

7    you've read, you understand the revised presentence

8    report that was issued in this case so we will be

9    discussing that.

10        I also want to make sure that there's nothing that

11    in any way interferes with your ability to understand

12    what is taking place in the courtroom today, and

13    finally, overall it's my goal to make sure you

14    understand the sentence that I impose and the reasons

15    for it.

16        So I'm going to ask you some questions.  If you

17    don't understand the question, let me know.  I'll

18    rephrase it.  If you want to have a chance to speak to

19    Attorney Duffett before you respond, that's fine.  Just

20    let me know; do you understand?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Why don't you pull the microphone

23    please closer to you.  Mr. Valbrun, have you used any

24    drugs or alcohol in the past 48 hours?

25            THE DEFENDANT:  No, Your Honor.

```
 1                THE COURT:  Are you currently taking any
 2    medication?
 3                THE DEFENDANT:  No, Your Honor.
 4                THE COURT:  How far did you go in school?
 5                THE DEFENDANT:  Graduate high school.
 6                THE COURT:  And you can read and write,
 7    correct?
 8                THE DEFENDANT:  Yes.
 9                THE COURT:  Do you understand why you are here
10    today?
11                THE DEFENDANT:  Yes, Your Honor.
12                THE COURT:  And what do you understand the
13    purpose of this hearing to be?
14                THE DEFENDANT:  Sentencing.
15                THE COURT:  I didn't hear you.
16                THE DEFENDANT:  Sentencing.
17                THE COURT:  Sentencing.  Is there anything
18    which might in any way interfere with your ability to
19    understand what is taking place today and what is being
20    said or for that matter even hearing it?
21                THE DEFENDANT:  No.
22                THE COURT:  No?
23                THE DEFENDANT:  No.
24                THE COURT:  And do you authorize Attorney
25    Duffett to act and speak on your behalf throughout this
```

1      hearing?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Attorney Duffett, have you read

4      and discussed with Mr. Valbrun the revised presentence

5      report in this case?

6              MR. DUFFETT:  Yes, Your Honor.

7              THE COURT:  I take it you've had ample time to

8      do that?

9              MR. DUFFETT:  Yes, sir.

10             THE COURT:  Mr. Valbrun, have you read the

11     revised presentence report in this case?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  You've read the entire document?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  I take it that you understood it?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And you've had plenty of time to

18     discuss it with Mr. Duffett; is that correct?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Attorney Duffett, in your written

21     submission, or I should say in the revised presentence

22     report itself, there's an indication that you object to

23     the provision in the report regarding Mr. Valbrun's

24     role in the offense.

25             MR. DUFFETT:  Yes.

1          THE COURT:  And I'll be hearing from you and

2     Attorney Joyce regarding that in just a moment, but

3     apart from that, other than that objection, does Mr.

4     Valbrun object to anything else that's contained in the

5     revised presentence report?

6          MR. DUFFETT:  No.

7          THE COURT:  Mr. Valbrun, as I just indicated,

8     there is one issue I'm going to have to resolve.  It

9     relates to the level of your role in the offense and

10    whether you should receive -- at what level you should

11    receive a reduction for your role in the offense and

12    I'm going to take up with the lawyers in just a moment,

13    but apart from that question, is there anything else in

14    this report which you've told me you've read and

15    understand, is there anything else in that report that

16    you disagree with?

17          (Discussion off the record between the

18    defendant and counsel)

19          THE DEFENDANT:  No, Your Honor.

20          THE COURT:  And so as far as you know to your

21    personal knowledge, the report is true; is that right?

22          THE DEFENDANT:  That's correct, Your Honor.

23          THE COURT:  And Attorney Duffett, do you agree

24    that apart from the issue that you've identified as

25    being in dispute here, the report is otherwise accurate

1    and correct in all respects?

2            MR. DUFFETT:  Yes, sir, other than

3    Paragraph 19.

4            THE COURT:  All right.  And so Mr. Valbrun,

5    you can be seated for now and Attorney Duffett, I'll

6    hear from you first on the issue of the guidelines and

7    Mr. Valbrun's role in the offense.

8            MR. DUFFETT:  I just have argument on that,

9    Judge, thank you.  Paragraph 19 in the PSR finds a two

10   level reduction for minor role.  I submit that a four

11   level reduction for minimal participant is appropriate.

12           Judge, you're very familiar with the facts of this

13   case and the facts of all of the other co-defendants

14   and related cases in this matter and I just wanted to

15   state that I believe the facts would support a larger

16   reduction of three or even four levels.

17           If you look at the Application Note of 3E1.2, and

18   Application Note 3, there is a list of factors to

19   consider in determining where the minor or minimal role

20   might assign and they include the degree to which the

21   defendant understood the scope and structure of the

22   criminal activity, the degree to which the defendant

23   participated in planning or organizing the criminal

24   activity, the degree to which the defendant exercised

25   decisionmaking authority, and the nature and extent of

1    the defendant's participation and his responsibility

2    and discretion that he had in conforming to that and

3    the degree to which the defendant stood to benefit from

4    this criminal activity and I would suggest that the

5    facts in this case, certainly as opposed to Mr.

6    Duffaud, who had a two level reduction, Mr. Valbrun's

7    participation is even less than that and I think the

8    fact that justifies a three level reduction indeed

9    should be a four level reduction considering his

10   relationship with Mr. Duffaud and his relationship to

11   the entire criminal enterprise.

12        He, Mr. Valbrun, was charged only with possession

13   with intent.  He was not charged with conspiracy.

14            THE COURT:  What, in your view, makes Mr.

15   Valbrun's participation substantially different from

16   Mr. Duffaud's?

17            MR. DUFFETT:  I think Mr. Duffaud recruited

18   Mr. Valbrun.  I think the sentencing memorandum of Mr.

19   Duffaud and the trial testimony supports the concept

20   that Mr. Duffaud rented the car and sought out Mr.

21   Valbrun to drive the car and I think the testimony of

22   Jacques Victor supported that and he said that this was

23   Mr. Valbrun's only involvement.

24            THE COURT:  Thank you.

25            MR. DUFFETT:  That's all I have.

1          THE COURT:  Thank you.  Attorney Joyce.

2          MR. JOYCE:  Your Honor, I would submit that

3    Mr. Duffaud and Mr. Valbrun should receive the same

4    reduction.  Both of them were aware of what was

5    happening before they left.

6          Mr. Valbrun was directed by Mr. Victor to hide the

7    stuff well.  That was one of the intercepts the Court

8    heard before at trial.  There were intercepts played at

9    trial where Mr. Valbrun was interested in receiving his

10   benefit from making the trip.  My recollection is he

11   said it was a phone that he was coming to pick up.  Mr

12   Victor testified that it was money.

13         Mr. Valbrun was the operator of the vehicle,

14   knowing that there were drugs in the vehicle as the

15   jury so found, and I would submit to the Court that

16   there's little to distinguish the role of Mr. Valbrun

17   and Mr. Duffaud and this basis, they should be treated

18   the same.

19         THE COURT:  Attorney Joyce, I want to make

20   sure I've heard you correctly and, that is, that you've

21   just told me that, in fact, the trial evidence was this

22   Mr. Valbrun spoke directly to Mr. Victor.  Mr. Victor

23   had encouraged Mr. Valbrun to hide it well; is that

24   what you told me?

25         MR. JOYCE:  Your Honor, I'm relying on what I

1    submitted as a trial brief, which was intercept number

2    1181 where Mr. Victor said when he called Mr. Valbrun's

3    phone, look for a good place to hide it -- excuse me,

4    look for a good place in the car to hide it well for me

5    and, quote, don't let the person driving act like a

6    monkey, do the speed limit.

7        THE COURT:  And that transcript reflects that

8    the other person on the phone was Mr. Valbrun?

9        MR. JOYCE:  I don't have the transcript in

10    front of me, Your Honor, and I don't recall what Mr.

11    Victor's testimony was on that point.

12        THE COURT:  Right.  Would you please remind me

13    what transcript number that is?

14        MR. JOYCE:  Session 1181 from 1:59 p.m.

15        THE COURT:  Okay.  Also, Attorney Joyce, I

16    want to ask you this.  In characterizing Mr. Valbrun's

17    role in this offense, should we be assessing it

18    relative to Mr. Duffaud alone or should we be -- since

19    he and Mr. Duffaud are charged and they are the only

20    defendants charged with respect to the count for which

21    Mr. Valbrun was convicted, or should his role be

22    considered in the context of the broader indictment in

23    this case and the other individuals involved?

24        MR. JOYCE:  Your Honor, it's clear that Mr.

25    Valbrun was being held accountable only for the one day

1    and the drug quantities upon which he personally

2    participated and not other aspects of the conspiracy.

3        I don't think the guidelines preclude the Court

4    from considering his role as it relates simply to the

5    count of conviction.  There's no question that he's

6    less culpable than other conspirators, but I think when

7    the Court looks at what he is being held accountable

8    for here and his role on the -- in the events that led

9    to this conviction and the charge with which he faced,

10    a two level reduction is appropriate.

11        In the event he were held responsible for

12    conspiracy-wide quantities, which could be

13    substantially more, perhaps it would be more

14    appropriate to look at his role in the broader context.

15    I'm not saying the Court is limited to taking that

16    view, but I think when considering his role with what

17    he's been convicted of and how it relates to Mr.

18    Duffaud and the Court's determination in Mr. Duffaud's

19    case, a two level reduction is appropriate.

20        THE COURT:  Thank you.  Attorney Duffett,

21    anything further on this point?

22        MR. DUFFETT:  Judge, only on that question of

23    the transcript, I don't have that in front of me, but

24    as I recall, he, Mr. Victor, was speaking with Mr.

25    Duffaud and that's why he said make sure the driver

1    obeys the speed limit or something like that.  Thank

2    you.

3              THE COURT:  All right.  I have not brought the

4    transcripts out on the bench with me.  Excuse me just a

5    moment.  There are some wires that grabbed on to my

6    foot.

7        I don't have the transcripts with me and actually

8    to me that's a significant point and so I want to take

9    a recess so I can retrieve the transcript and take it

10   look at it.  That shouldn't take any more than about

11   five minutes, so we will take a brief recess at this

12   time.

13             (Time noted:  12:18 p.m.)

14             (Recess called).

15             (Time noted:  12:22 p.m.)

16             THE COURT:  The transcript that was identified

17   in the trial record materials as session number 1181

18   does reflect that the conversation which occurred on

19   March 16, 2014, in which Mr. Victor says, among other

20   things, look for a good place in the car and hide it

21   well for me.  Look under, if you can search under, if

22   you can go under physically yourself and so on was with

23   Mr. Valbrun.

24       Based upon the revised presentence report as well

25   as the trial evidence in this case, I find that Mr.

1    Valbrun's role in the offense was substantially the

2    same as Mr. Duffaud.  They each similarly performed

3    different functions, but working together they both

4    secreted drugs in the vehicle, in a rented vehicle,

5    which was then driven from Boston to Maine by Mr.

6    Valbrun with Mr. Duffaud in the driver's seat.  They

7    were both involved in communications with Mr. Victor.

8         I don't see a basis for distinguishing the level

9    of participation that they had in this offense.

10   Therefore I conclude that the two level adjustment that

11   is currently contained in the revised presentence

12   report is the appropriate level of adjustment for

13   purposes of section 3B1.2 of the sentencing guidelines.

14        Anything further on that point?

15        MR. JOYCE:  No, Your Honor.

16        MR. DUFFETT:  No, sir.

17        THE COURT:  All right.  And so with that

18   ruling, I take it there are -- and I've heard no other

19   objections to the revised presentence report, correct?

20        MR. JOYCE:  Correct.

21        MR. DUFFETT:  Correct.

22        THE COURT:  With that then, I will now hear

23   from the Government with respect to the sentence.

24        MR. JOYCE:  Your Honor, it's clear from the

25   trial testimony what happened here and why it is we are

1    here.  I want to take a minute now that we've compared

2    Mr. Duffaud to Mr. Valbrun and their conduct to

3    distinguish their conduct that happened after they were

4    arrested and to suggest to the Court that Mr. Duffaud's

5    sentence should include a starting point here because

6    Mr. Valbrun's conduct is so different.

7        Mr. Duffaud accepted responsibility.  He pled

8    guilty.  He expressed remorse.  Mr. Valbrun did not.

9    Mr. Valbrun not only exercised his right to a trial, he

10   also testified at that trial and provided to the jury a

11   version of events that I would suggest were wholly

12   incredible.  Should the jury have believed them, he

13   would have been acquitted.  It simply can't be said

14   that anything but the fact that the jury flatly

15   rejected his version of events.

16       What's also different as far as their conduct

17   during the commission of the offense is that not only

18   was Mr. Valbrun and Mr. Duffaud in the car, but there

19   were two children, at the time age two and age nine.

20   The three-year old Mr. Valbrun's son.  The nine-year

21   old was the child of a significant other who the PSR

22   indicates he has significant fatherly responsibilities

23   over.  I can't comprehend why anybody would bring a

24   two-year old and a nine-year old on a drug run.

25       Drug trafficking is a very dangerous business.

1    It's not a business for children and the only

2    explanation I can think of as to why those two kids

3    were in the car was to throw off the police as to what

4    the purpose of that trip was.

5         It was clearly a drug delivery.  It wasn't a

6    social visit.  Mr. Valbrun was most concerned on the

7    phone about when he was going to get his money from Mr.

8    Victor.  This was a profit endeavor and I can't think

9    of any rational explanation for why a two-year old and

10    a nine-year old would be in the car.  It just -- it's

11    shocking and it's -- I don't quite know how to suggest

12    to the Court it should impact on the sentence, but when

13    the Court thinks about the nature and circumstances of

14    the offense, that's a factor I would suggest the Court

15    should consider.

16         We also have 225 grams of heroin.  No question

17    that heroin is destroying this district, it's ripping

18    apart families, it's killing people and there's no

19    doubt that 225 grams of heroin on the streets of

20    southern Maine would have a devastating impact.  That's

21    not to set aside in any way the 100 grams of crack that

22    were also in there which destroys people's lives in

23    somewhat similar ways.

24         I think the Court would be well within its

25    discretion in this case to impose a sentence that's at

1    or near the guideline range.  That's a substantial

2    difference from what the Court imposed on Mr. Duffaud,

3    but there are factors in this case that I've just gone

4    through that I think warrant a substantially different

5    treatment.  Maybe a guideline sentence is too severe,

6    but I think a departure or a variance of any

7    significant amount is not warranted and I'd ask the

8    Court to impose a sentence at or near the guideline

9    range.

10            THE COURT:  Thank you.

11            (Discussion off the record between the

12    defendant and counsel).

13            MR. DUFFETT:  Thank you, Judge.  First of all,

14    procedurally, I want to reassert and preserve all

15    pretrial motions, all trial motions and all post trial

16    motions filed by the defendant.

17            THE COURT:  So noted.

18            MR. DUFFETT:  Thank you.  We did submit a

19    number of documents to the Court and I want to make

20    sure that you have those, sir.  There was a letter that

21    I think went directly to you from his pretrial

22    supervision officer from Massachusetts.

23            THE COURT:  Yes, I have that.

24            MR. DUFFETT:  Thank you.  There are some

25    documents from Cumberland County Jail, which we had

1    delivered to the Court on May 10th.   4 pages of --

2            THE COURT:  I have that.

3            MR. DUFFETT:  Thank you.  And there's also on

4    May 10th we submitted a number of letters from family

5    and friends prior to that date.

6            THE COURT:  I have the letters.

7            MR. DUFFETT:  Thank you, sir.  And also, we

8    filed a motion for a variant sentence.  The number on

9    that is docket 1163.

10           THE COURT:  I have received that, yes.

11           MR. DUFFETT:  Thank you.  The letter from the

12   supervision officer in Massachusetts that he supervised

13   for a very lengthy period of time, Mr. Valbrun was on

14   pretrial release and supervision and did well.  While

15   on release, he was ordered to this office in a manner

16   as directed by the Court and maintained suitable

17   employment.  While on release, the defendant abided by

18   the directives of the probation office and was

19   compliant in home contacts and other interactions with

20   the probation officer.

21           Overall, the defendant was able to adjust to his

22   pretrial supervision well and demonstrated positive

23   strides during this period of time.  That, I understand

24   it, is a distinction from what Mr. Duffaud did on

25   pretrial supervision, I believe -- maybe it was post

1    trial, I'm not sure -- post plea, he ended up violating

2    and committing a new offense.

3        The document that we submitted from the jail

4    indicate that Mr. Valbrun availed himself of programs

5    there and he's done well.  There's a religious program

6    certificate, computer skills class, a goal setting

7    workshop and a construction industry standards ten-hour

8    course which would, I think, indicate to you, Judge,

9    and supports the idea that Mr. Valbrun is a hard

10    worker, had a good employment history, has paid taxes

11    for many, many years and I think this reflects his

12    desire to get back into the workforce where he can get

13    a good job and support his family.

14            (Discussion off the record between the

15    defendant and counsel)

16        There are a number of letters that we submitted,

17    Judge, and I'm just going to read from a few of them

18    which indicate -- at least gives an idea of the kind of

19    person Mr. Valbrun is.  The last letter in the

20    submission is from Rebecca Miller.  She's the

21    vocational instructor at the jail and she wrote -- and

22    they don't always write these kinds of letters and

23    we're happy that she did and she did this because she

24    considers Jean a good person.

25        He is pleasant in class, does not miss his

1    classes, seems to enjoy learning whatever he is there

2    to meet and that he will take new classes that are

3    available.  I will not hesitate to add him to future

4    classes as they are offered, and again I think this

5    letter supports the idea that Mr. Valbrun is a hard

6    worker and provider for his family.

7        Now, some of the other letters in this package,

8    Judge, I think may give you a good idea of who Mr.

9    Valbrun is.  The first letter from his fiancé to Jean

10   Valbrun indicates that they have a four-year old son

11   together and Jean is a wonderful father.  Then she

12   relates an incident where giving birth to their son,

13   she almost lost her life due to complications and he --

14   Jean stood by her throughout that ordeal and has stood

15   by them ever since and supported her and their son.

16       She followed up in her last paragraph by saying my

17   mother and the whole extended family and my children,

18   teachers, doctors all find this to be a huge shame and

19   sadness that someone who is hardworking and great

20   father has to be away from us.  We're all hopeful we

21   can have him home soon.

22       Then the fourth letter down from Santiago, a

23   friend of the family for the past ten years, indicates

24   that I'm fully aware of the gravity of the crime.  This

25   is not the person I know and I'd like to give you a

1    perspective that shows he's more than the sum of his

2    actions on the day of the crime.

3         He has a strong sense of responsibility and

4    obligation which applies to his family, his work and

5    the community.  He grew up in an impoverished area of

6    Boston and began working at an early age to help his

7    mother provide and care for his younger sister.  To his

8    friends and former co-worker, Mr. Valbrun is and always

9    has been willing to lend a hand whenever someone is in

10   need, whether that's giving them a ride, fixing a

11   neighbor's car or giving a homeless man at the end of

12   the street some spare change, Mr. Valbrun was always

13   helping out.

14        He goes on to say that he possesses a great deal

15   of integrity and is someone who can always be counted

16   on.  And he follows that Mr. Valbrun, it's unfortunate

17   he made some poor decisions that led him to where he is

18   now, however I strongly believe that he has learned

19   from this situation and wants to become a better person

20   and a role model for his young son.

21        And four letters down from that from Merline,

22   close friend of the family, she concludes by saying

23   unfortunately, Mr. Valbrun has made a poor decision,

24   but I know he has learned his lesson.  To give him a

25   chance, he will reestablish his career if he can and

1    continue to be a positive role model in his son's life.

2        Now, our motion for a variant sentence, Judge,

3    we're asking the Court for a significant variant

4    sentence downward and essentially the reasons that we

5    give are outlined in the motion, but it's clear, Judge,

6    that any sentence the Court imposes, one of the goals

7    of Section 8553 is to promote respect for the law and

8    to provide just punishment and the 1st Circuit has

9    commented on that in U.S. v. Martin, 520 F.3d 87

10   (2008).

11       The subpart of section 3553(a) directs that a

12   sentencing court consider the need for a sentence to,

13   quote, promote respect for the law and to provide just

14   punishment for the offense.

15       Then the Gall case, G-A-L-L case, the court

16   observes -- Supreme Court case -- respect for the law

17   diminishes the natural principles of justice, such as

18   the principle that punishment should correlate with

19   culpability are ignored.  With this thought in mind, we

20   have on several occasions recognized that District

21   Court's have discretion in appropriate cases to align

22   co-defendant sentences somewhat in order to reflect

23   comparable degrees of culpability, at least in those

24   cases where disparity are conspicuous and threaten to

25   undermine confidence in the criminal justice system.

1          With that in mind, Judge, we want to stress the

2     history and characteristics of Mr. Valbrun.  The

3     presentence report covers it beautifully.  It's a well

4     done presentence report and it gives you a good idea of

5     the family background and his work history in this

6     country.

7          As you can see by the number of people in the

8     courtroom today, he comes from a large and extended and

9     supportive family, something we don't often see in this

10    courtroom.  They have all come up here from Boston

11    today, Judge, for this.

12         No prior criminal convictions, excellent

13    employment history unlike so many that we see here.

14    Good support from his hardworking extended family, good

15    relationship with his fiancé, no history of alcohol or

16    substance abuse.

17         Another 3553(a) factor is nature of the offense.

18    The Court's well-aware of the offense in this case.  It

19    was a nonviolent offense, one time conduct with a

20    relatively minimal role.

21         Does Mr. Valbrun have personal and vocational

22    plans?  He certainly does.  His goal is to get this

23    past him and to get back into the community so that he

24    can work on the goals that we state in our motion,

25    including go to and attend and graduate from the

1  Benjamin Franklin Institute of Technology in

2  Massachusetts, get a degree in auto mechanics.  He's

3  worked, I think, for Jiffy Lube for eight years down

4  there and does a good job.  He wants to get a good job

5  in the same field when he gets out and hopefully start

6  his own business in that field, all with the goal of

7  providing a good home for his fiancé and children.

8      Now, I think, Judge, all of this -- we have a few

9  speakers that briefly want to speak to you, but before

10  they do, I think I guess what we're saying is that all

11  of these factors I'm urging the Court to view in

12  regards to the mandate of the 3553, to avoid sentencing

13  disparities and as our motion indicates, if Mr. Valbrun

14  was sentenced inside the guideline range, he would --

15  it would be the fourth longest sentence in this very

16  large case.  It seems to, I would argue, cast some

17  doubt on the justice system.  It would not serve to

18  promote respect for the law and it would not be a just

19  punishment.

20      Now, I realize you have to balance all of these

21  factors in considering a variant sentence and there's

22  no question that Mr. Valbrun went to trial.  Mr.

23  Valbrun testified, he was found guilty.  It's ironic

24  that of all the related co-defendants, I don't know how

25  many there are, there's at least a dozen if not more,

```
1    he's the only one that went to trial and it would truly

2    be ironic and unfair if his sentence was one of the

3    very top sentences imposed in this case.

4         I'm urging Court to look at these factors with

5    that as a background because he does have positive

6    things in his life.  He does have a family, he does

7    have goals.  He's not a loser, as we often see in this

8    court.  So I would urge the Court to consider a

9    significant downward departure out of that guideline

10   range.

11        We do have three speakers, Judge, if you would

12   allow that.

13             THE COURT:  Yes, of course.

14             MR. DUFFETT:  Thank you.  First of all, we'll

15   have a friend.  Come on up.

16             THE COURT:  If you would please state your

17   full name and spell your last name.

18             MR. AMANTAN:  Santiago Amantan.

19   A-M-A-N-T-A-N.

20             THE COURT:  Thank you.  Please go ahead.

21             MR. AMANTAN: Your Honor, before you decide

22   anything, I would like to say Jean Valbrun, I know him

23   for so long and he's a good man, good father and a good

24   friend.  His heart -- and I know that he made some bad

25   decisions and I know he learned his lesson and as his
```

```
 1    friend, family, we want him back.  We love him and we

 2    just want him back and we want him back to be with his

 3    son, his family, his loved ones and just love him.

 4    Thank you.

 5            THE COURT:  Thank you.

 6            MR. DUFFETT:  We have Jean's sister Sonia

 7    Valbrun.

 8            THE COURT:  Please state your full name and

 9    spell your last name.

10            MS. VALBRUN:  Marie Sonia Valbrun,

11    V-A-L-B-R-U-N.

12            THE COURT:  Thank you.  Please go ahead.

13            MS. VALBRUN:  He is my little brother.  He is

14    a family guy.  He's a hard worker and I also have three

15    kids of my own.  I have my 13-year old, my 9 year old,

16    he's here with me and I also have a four-year old.  So

17    he helped me.  My kids don't even call him uncle.  All

18    me three of my kids call him daddy.  He always tried to

19    help me dropping them to school, pick them up for me

20    and I have my nine-year old, she has asthma.  Sometimes

21    she goes to the hospital for weeks or days.  He's

22    always there when I'm out at the hospital.  He would

23    always come and sleep with her and help me out because

24    I have three.

25            So it's like we ready for him.  If it was a
```

1   lesson, he learned his lesson, but we all out there

2   suffering.  His kid, his own son, always comes to my

3   house.  The first thing he asks is where is my dad so I

4   have to lie to him.  I said your dad went on vacation,

5   he is coming back home.

6       In school he always be crying.  Sometimes they

7   call me at work, I can't work the way I used to because

8   I need to help with my kids.  The teacher always be

9   calling me because he is crying out and asking for

10  daddy.  I am the one they call, so I have to go and

11  pick him up from school and the mother is suffering

12  through, but we try to work it out together.

13      I would like to see if he could come home, do the

14  best he can like he usually do and everybody miss him.

15  We all want him to come back home.

16          THE COURT:  Thank you.

17          MR. DUFFETT:  And finally, Judge, his aunt.

18          THE COURT:  If you would please state your

19  full name and spell your last name.

20          MS POWELL:  Janet Powell, P-O-W-E-L-L.

21          THE COURT:  Thank you, go ahead.

22          MS. POWELL:  I just want to say, you know,

23  first of all my son, he's four and he's growing up

24  without a father, it's so hard.  He cries every night,

25  mommy I want daddy, and we usually pray for him every

1    night before bed.  He did him everything and I just

2    think that he made a big mistake and I know that he

3    learned from this.

4        He's really not a bad guy and everybody just

5    misses him, not only for me, Your Honor, but I pray

6    that you find it in your heart to give him something

7    that can send him back to his son and his family.

8        His son is really suffering.  He suffers from

9    asthma and he has asthma attacks so often and every

10   time he went to the hospital, he would leave work, ask

11   for time off so he can spend the time in the hospital

12   with his son and his son loves him so much.  And our

13   way back from Maine when this all happened, he said oh,

14   what's your name to Santiago and I said his name is

15   Santiago and he said Santiago, turn back and go get my

16   daddy.  He's the only one that's left there and I need

17   my daddy.  And I couldn't help him.  I don't know what

18   to tell my son.

19       He's like so affected by it.  I don't know, it's

20   another kid growing up with no father and it makes such

21   a huge different to have a man whose involved with his

22   kids and I just think he's not a bad person.

23       He goes to church every Sunday, he pray at night,

24   he provides for his family, he's always worked and at

25   times when I was like take him down, he would make sure

1    I'm okay.  He checks up on me, he's so good to my

2    family also and everybody just misses him.

3        He takes care of my daughter, who she's not his

4    daughter biologically, but he's been there since she

5    was two years old and she's known him all her life and

6    she's in school right now.  I just don't want them to

7    see him in this situation and I pray that he can come

8    back home and I know that he will be working and do the

9    right thing and I just pray that you can, you know,

10    find it in your heart to forgive him and send him home

11    for us.

12        THE COURT:  Thank you.

13        MR. DUFFETT:  That's all I have, Judge.  I

14    would just add that throughout my representation of Mr.

15    Valbrun, I've been very close with these people and

16    they've been very involved in this case.  They call me

17    all the time.  I send them updates all the time and as

18    the presentence report indicates, they are successful

19    people.  They are good members of the community down

20    there in Boston and it's an incredibly close family and

21    I've never seen a family quite this large and quite

22    this close.  So that's all I have, Judge.  Thank you.

23        THE COURT:  Thank you.  Mr. Duffett, I want to

24    just have the record be clear about the exhibits that

25    you've submitted today.  First of all, with respect to

1    your letter of May 10th, which had attached to it -- 13

2    letters, you've not marked that yet; have you?

3              MR. DUFFETT:  No, sir.

4              THE COURT:  So we will have it marked as

5    Defendant's Exhibit 1.  Is there any objection?

6              MR. JOYCE:  No, sir.

7              THE COURT:  That's admitted then.  We have

8    also your letter of May 10th which enclosed four pages

9    of documents from the Cumberland County Jail.  This can

10   be marked as Defendant's 2; is there any objection to

11   its admission?

12             MR. JOYCE:  No, Your Honor.

13             THE COURT:  We also have the two page letter

14   from Marlenny Ramedehal, U.S. probation officer from

15   the District of Massachusetts, dated May 11, 2016,

16   which can be marked as Defendant's Exhibit 3; is there

17   any objection?

18             MR. JOYCE:  No, Your Honor.

19             MR. DUFFETT:  Thank you, Your Honor.

20             THE COURT:  Mr. Valbrun, if you will stand

21   please.  As a defendant who is before the Court for

22   sentencing, you have the constitutional right to speak

23   and to address me at this time, but only if you wish.

24   You're not required to speak.  It's totally up to you,

25   would you like to speak at this time?

```
 1              THE DEFENDANT:  No, Your Honor.

 2              THE COURT:  All right.  Thank you.  Is there

 3    anything further then from the defendant?

 4              MR. DUFFETT:  No, sir.

 5              THE COURT:  Anything further from the

 6    Government?

 7              MR. JOYCE:  No, Your Honor.

 8              THE COURT:  All right.  I'm going to be

 9    recessing so that I can reflect upon the arguments I've

10    received.  I expect that recess will be about

11    15 minutes after which I'll be back on the bench to

12    finalize this hearing.  We will be in recess.

13              (Recess called)

14              THE COURT:  I received and considered in

15    arriving at the sentence the marked defendant's

16    exhibits which we just discussed as well as the revised

17    presentence investigation report in this case as well

18    as the written motion for variant sentence that was

19    filed by the defendant.

20         I want to begin with reviewing by the attorneys

21    the applicable provisions of the sentencing guidelines.

22    The total offense level for Mr. Valbrun's offense is

23    26.  His criminal history category is 1 and these

24    figures result in a guideline sentencing range of 63 to

25    78 months, a period of supervised release of three
```

1   years, a fine range of $12,500 to $1 million and

2   renders him ineligible for probation.

3        Counsel, are there any objections to what I've

4   just indicated to be the guideline provisions?

5            MR. JOYCE:  No, Your Honor.

6            MR. DUFFETT:  None other than preserving our

7   objection to Paragraph 19.

8            THE COURT:  Thank you.  That is preserved.  In

9   addition to considering the documents that I've just

10  indicated as part of my sentencing analysis in this

11  case, Mr. Valbrun, I've also, of course, listened

12  carefully to what the lawyers have had to say, I

13  listened carefully to the statements made by the three

14  individuals that spoke here in the courtroom and I also

15  read with care all the letters that were submitted on

16  your behalf.

17       In determining a sentence, it is my responsibility

18  to consider the sentencing guidelines and the range in

19  the case and I've done that.  I'm also required by law

20  to consider other factors.  These include the nature

21  and circumstances of the offense, your personal history

22  and characteristics, the need for the sentence to

23  reflect the seriousness of the offense, promote respect

24  for the law, provide just punishment, the need for a

25  sentence to afford deterrence, protect the public from

1  further crimes by you and to provide you with needed

2  educational or vocational training, care or other

3  correctional treatment.  Also of particular

4  significance, I think, to this sentence is the need to

5  avoid unwarranted sentencing disparities and I'll be

6  discussing that a bit more.

7        I've considered all those factors and others in

8  arriving at your sentence, but my focus has been on

9  your personal history and characteristics as well as

10 the nature and circumstances of the offense.  You had a

11 trial.  The jury found you guilty of possession with

12 the intent to distribute heroin and cocaine base,

13 aiding and abetting.

14       Turning first to Mr. Valbrun's personal

15 characteristics, today he's 28 years old.  Born in

16 Haiti and came to America as a child.  He has an

17 extended family here that is close and as a matter of

18 fact has appeared with him at court proceedings.  He's

19 not a United States citizen.

20       It's indicated that you grew up in an impoverished

21 section of Boston and has had to make his way by his

22 own efforts.  As an adult, he's done that.  He's been

23 continuously employed.  The record is clear that he's

24 taken responsibility for being a father of his son who

25 is now four, as well as providing for his fiancé and

1    her now nine-year old daughter.

2        He has many people in his life who trust him and

3    obviously care about him as demonstrated today by the

4    people who are present.  He's described in these

5    letters as having some very good qualities, being

6    loving, helpful, respectful, generous and someone who

7    can always be counted on.  I have no doubt of the

8    sincerity of the way that he's been characterized by

9    those people that know him and therefore took those

10   representations that he has those qualities.

11       Mr. Valbrun was arrested on May 22nd of 2014 and

12   he remained out on bail from that time until his

13   conviction, which was November 24th of 2015.  He

14   complied with all requirements of bail as set.

15       He's been incarcerated now since the trial for

16   more than six months.  He's had no disciplinary

17   incidents at the Cumberland County Jail.  He's

18   participated in -- including several skills related

19   programs as well as religious programming.

20       His criminal history category for purposes of the

21   guideline is one and he has a record having been

22   charged with crimes twice for events unrelated to the

23   current charge, but he has no convictions or other

24   offenses, and neither of the alleged crimes for which

25   he was charged and not convicted involved drugs.

1    He denies any substance abuse history and I can

2  find no other evidence in the record that I have seen

3  to suggest that he's abused drugs or alcohol or is need

4  in treatment for the same.

5    Turning to the circumstances of this offense, Mr.

6  Valbrun was recruited to act as a drug courier along

7  with his half-brother, Mr. Duffaud.  In exchange for

8  money, they agreed to hide drugs in a car, rented car,

9  and transport it to Lewiston from Boston.

10    The drugs, besides quantities which are identified

11  in the revised presentence report, consisted of heroin

12  and cocaine base.  These were significant quantities

13  and let the record be clear that I adopt the revised

14  presentence report as my findings in all respects.

15    Mr. Valbrun drove the car.  Mr. Duffaud was in the

16  passenger seat in the front.  In the back were Mr.

17  Valbrun's son, then age two, and his fiancé's daughter,

18  age nine.  There's been no plausible explanation given

19  for the presence of the children during the commission

20  of this crime other than that suggested by Mr. Joyce;

21  that the presence of the children would lend an air of

22  legality to what was going on.  They were decoys, in

23  effect, and of course the presence of the children

24  makes this particularly appalling.

25    At trial, Mr. Valbrun testified that he was not

1    aware that there were drugs in the car and that his

2    purpose in coming to Maine was to purchase a cellphone;

3    in other words, he positioned himself as perhaps an

4    unwitting victim of his co-defendant, Mr. Duffaud.  His

5    version of his involvement is, of course, in direct

6    conflict with a substantial amount of evidence that was

7    received which established that, in fact, he knew

8    exactly what he was doing and what was going on, even

9    evidence of a phone conversation which reflected that

10   he knew exactly what was going on and it's directly in

11   conflict with the jury's verdict.

12          As a result, Mr. Valbrun has received an

13   enhancement under the guidelines for obstruction of

14   justice and, Mr. Valbrun, I will say to you directly

15   now that you have an absolute right to testify in this

16   case and I certainly would not in any way factor into

17   or hold against you in arriving at a sentence in this

18   case the fact that you chose to have a trial, the right

19   to testify, those are your rights, but you do not have

20   the right to take the stand and testify falsely about a

21   matter that was material to this case.

22          To fall within the purview of this guideline

23   provision for obstruction of justice requires a finding

24   that there was false testimony under oath concerning a

25   matter material to the proceeding and that testimony

1    was given with the willful intent to provide false

2    testimony rather than as a result of confusion, mistake

3    or faulty memory.

4         Not only did the jury reject Mr. Valbrun's version

5    of what was going on and what was in his mind, but I,

6    of course, was present for his testimony myself and I

7    am satisfied that, in fact, testimony was false and

8    qualifies as perjury for purposes of the application of

9    the guideline provision that we're discussing, that is,

10   obstructing justice.

11        Mr. Valbrun's commission of this crime, which is

12   serious, and his false testimony, which the jury

13   rejected and I have found to be false, establish a need

14   for a sentence of imprisonment in this case that will

15   reflect that, reflect the seriousness of all this and

16   not unduly minimize the seriousness of it.

17        The seriousness of this particular crime has to be

18   understood in the context of the opiate crisis that is

19   devastating the lives of innumerable people in Maine

20   and elsewhere.  It is taking a particular toll on the

21   Lewiston/Auburn community and, of course, this is the

22   community where Mr. Valbrun and Duffaud were going to

23   be delivering the drugs they were transporting.

24        Now, mention has been made of the sentence that I

25   imposed on Mr. Duffaud, Mr. Valbrun's co-defendant in

1   this case, and one of the objectives of sentencing is

2   to avoid unwarranted disparities in sentences and the

3   keyword there is unwarranted because there are cases in

4   which sentencing disparities are warranted and I

5   conclude that this is one, and I believe that the

6   disparity as between the sentence Mr. Duffaud received

7   and that Mr. Valbrun should receive is required and

8   justified on the basis that Mr. Valbrun -- it was Mr.

9   Valbrun who was responsible for involving his son and

10  his fiancé's daughter in the commission of this crime

11  and, in addition, it is Mr. Valbrun who testified

12  falsely.

13        However, the period of incarceration in this case

14  has to also stand for Mr. Valbrun's personal history

15  and characteristics that I've already described and

16  that are more fully described in the revised

17  presentence investigation report.  Here I have an adult

18  before me whose life is otherwise marked by being

19  dutiful about his work, taking his personal

20  responsibility seriously, earning the trust of his

21  family and the people that are close to him and who has

22  no criminal record.  I have also considered, as I've

23  been urged to, his family circumstances and the impact

24  of his incarceration on his son.

25        I would note that the lower end of the guideline

```
 1    range in this case is 63 months.  That means the
 2    sentence would be more than five years.  Weighing all
 3    of this, I have concluded that on balance, a
 4    substantial prison sentence must be imposed because of
 5    the seriousness of the offense and the other
 6    circumstances that I've just described that contribute
 7    to my view that this was a serious offense, but I also
 8    conclude that the section 3553(a) factors related to
 9    Mr. Valbrun's personal history and characteristics do
10    support a variant below the guideline sentence.
11         And so before I impose sentence, counsel, have I
12    addressed any of the issues that you've raised with
13    respect to sentence in this case?
14              MR. JOYCE:  Yes, you have.
15              MR. DUFFETT:  Yes.
16              THE COURT:  All right.  Mr. Valbrun, if you
17    will stand please.  Based upon all these
18    considerations, Mr. Valbrun, it's my responsibility to
19    arrive at a sentence of imprisonment that is
20    sufficient, but not greater than that necessary to
21    achieve its purposes and the primary purposes of the
22    sentence is -- the sentence in this case it seems to me
23    has to reflect the seriousness of what's occurred and
24    provide for just punishment and also provide adequate
25    deterrence by not unduly minimizing the crime.
```

1          For those reasons, I conclude that what is just

2    and fair under all these circumstances is that you be

3    committed to the custody of the U.S. Bureau of Prisons

4    to be imprisoned for a total term of 28 months.

5          Attorney Duffett, are you making any respect with

6    respect to Mr. Valbrun's placement?

7               MR. DUFFETT:  Near Massachusetts, if possible.

8               THE COURT:  All right.  And so I will so

9    indicate in the judgment in this case.  And so Mr.

10   Valbrun, at the conclusion of this hearing, you'll be

11   remanded to the custody of the United States Marshal to

12   begin your sentence.

13         Upon release from imprisonment, I'm ordering that

14   you be on supervised release for a term of three years.

15   You're responsible to report to the probation office in

16   the district to which you are released within 72 hours.

17   You're not to commit another federal, state or local

18   crime.  You're not to illegally possess a controlled

19   substance.  You are to cooperate in the collection of

20   DNA as directed and you're not to possess a firearm,

21   ammunition, destructive device or any other dangerous

22   weapon; do you understand?

23               THE DEFENDANT:  Yes, Your Honor.

24               THE COURT:  I'm imposing the Court's standard

25   conditions of release adopted in this district.

1    Attorney Duffett, have you reviewed with Mr. Valbrun

2    the standard conditions?

3         MR. DUFFETT:  Yes.

4         THE COURT:  And are you satisfied that he

5    understands them?

6         MR. DUFFETT:  Yes.

7         THE COURT:  Mr. Valbrun, is that correct, you

8    understand the standard conditions?

9         THE DEFENDANT:  Yes, Your Honor.

10        THE COURT:  I'm also imposing the following

11   special condition of release.  A U.S. probation officer

12   may conduct a search of you and of anything you own,

13   use or possess if the officer reasonably suspects that

14   you are violating a condition of supervised release,

15   and reasonably suspects that evidence of the violation

16   will be found in the areas to be searched.  Searches

17   must be conducted at a reasonable time and in a

18   reasonable manner.  Failure to submit to a search may

19   be grounds for revocation of release.

20       Is there any objection to that special condition?

21        MR. DUFFETT:  No.

22        THE DEFENDANT:  No, sir.

23        THE COURT:  All right.  And you understand it,

24   Mr. Valbrun?

25        THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  I'm imposing a special assessment

2     of $100.  I find Mr. Valbrun that you do not have the

3     ability to pay a fine and therefore I'm not going to

4     impose a fine in this case and as I recall, Attorney

5     Joyce, there's no request for forfeiture in this case;

6     is there?

7          MR. JOYCE:  That's correct, Your Honor.

8          THE COURT:  Thank you.  Before I advise Mr.

9     Valbrun of his right to appeal, counsel, is there

10    anything else that I've not addressed that you believe

11    needs to be addressed?

12         MR. JOYCE:  No, Your Honor.

13         MR. DUFFETT:  No, sir.

14         THE COURT:  Mr. Valbrun, to exercise your

15    right to appeal your conviction and the sentence that

16    I've just imposed, you must file with the clerk of

17    court within 14 days of today a written notice of

18    appeal; do you understand?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  If you fail to do that, you'll

21    have given up your right to appeal both the sentence

22    and the conviction; do you understand?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Also, if you can't afford to file

25    the appeal, you can appeal without cost.  Simply

1    request the clerk to prepare and file the notice of

2    appeal on your behalf.   Again, do you understand?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Mr. Valbrun, by all indications of

5    the record that I have in front of me, it's my

6    expectation that once you've completed your prison

7    sentence that you're not going to commit more crimes.

8              THE DEFENDANT:  No, Your Honor.

9              THE COURT:  That has not been your path in

10   life until now and this offense and the way you

11   conducted yourself at trial are beyond my ability to

12   explain, but I truly hope that they were an aberration

13   for you and that the trust that so many people seem to

14   have in you is really in the end who you really are and

15   what you're made of, that you made some terrible

16   judgments here and that have landed you in terrible

17   trouble, but that you have it in you to get beyond

18   this.

19        Serve your prison time, be successful on

20   supervision and when you're done with this, move on

21   with your life and do the right thing.   So that's my

22   expectation for you and that's what I hope you will do.

23   I hope that you will use your time incarcerated to

24   improve yourself and take advantage of everything

25   that's offered to you and that's a big down time.   It's

1    a chance to come out a better person and that's my hope

2    for you.

3            With that, counsel, anything further?

4                MR. JOYCE:  No, Your Honor, thank you.

5                THE COURT:  All right.  Court will be in

6    recess.

7                (End of proceeding).

8            **C E R T I F I C A T I O N**

9    I, Dennis Ford, Official Court Reporter for the United

10   States District Court, District of Maine, certify that

11   the foregoing is a correct transcript from the record

12   of proceedings in the above-entitled matter.

13   Dated:  September 29, 2016

14                /s/ Dennis Ford

15                Official Court Reporter

16

17

18

19

20

21

22

23

24

25